1

2                                                        HONORABLE THOMAS S. ZILLY

3

4                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
5                                    AT SEATTLE

6   INTERNATIONAL BUSINESS
    MACHINES CORPORATION,
7

8                      Plaintiff,                2:20-cv-00851-TSZ

9            v.

10  ZILLOW GROUP, INC.; and
    ZILLOW, INC.,
11

12                     Defendants.

13  INTERNATIONAL BUSINESS
    MACHINES CORPORATION,
14

15                     Plaintiff,                2:20-cv-01130-TSZ

16           v.

17  ZILLOW GROUP, INC.; and            JOINT STATUS REPORT
    ZILLOW, INC.,
18

19                     Defendants.

20

21          Pursuant to the Court's July 30, 2020 Minute Order (Case 2:20-cv-00851-TSZ Dkt. # 125;

22  Case 2:20-cv-01130-TSZ Dkt. # 23), after having met and conferred (as defined in Local Civil

23  Rule 1(c)(6)) on August 14, 2020, International Business Machines Corporation ("IBM") and

24  Zillow Group, Inc. and Zillow, Inc. (collectively "Zillow") jointly file this Joint Status Report

25  addressing the issues raised in the Court's Minute Order.

JOINT STATUS REPORT - 1
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**(a)     Bifurcation**

IBM's Position:

IBM proposes a hybrid of the sequencing and bifurcation proposals submitted by the parties and the Court consistent with Phase One – Option 3.  *See* Case 2:20-cv-00851-TSZ Dkt. # 125 at p. 3.  IBM's approach captures the advantages of (1) a bellwether patentability test before discovery, (2) narrowing asserted claims and prior art during discovery, and (3) bifurcating issues after discovery for trial.  IBM proposes that:

- ***Before discovery***, litigation would proceed consistent with the "bellwether" approach described in footnote 3 of the Court's July 30, 2020 Minute Order.  *Id.* at p.5 n.3. Specifically, IBM proposes that the Court address Zillow's 35 U.S.C. § 101 challenge to the '183 Patent as a bellwether for whether patent eligibility can be decided on the merits before the close of fact discovery.[1]  If the Court denies Zillow's challenge, discovery would proceed as to all accused products and patents in Case No. C20-851.  Otherwise, the Court would proceed to decide Zillow's § 101 challenges to the '389 and '789 patents next.  The case would then proceed on the remaining accused products and patents through discovery.[2]

- ***During discovery***, IBM and Zillow would narrow asserted claims and prior art consistent with the Federal Circuit Bar Association's Model Order for Limiting Excess Patent Claims And Prior Art.[3]

---

[1] IBM elaborates on this proposal in Exhibit A: IBM's Supplemental Brief To Show Cause Why The Court Should Not Address Patentability On The Merits Before The Close Of Fact Discovery.

[2] Under IBM's proposal, IBM would serve infringement contentions in the -1130 case before discovery proceeds in the -851 action, as set forth below in Paragraph 5(c) below.

[3] Federal Circuit Advisory Committee Model Order Limiting Excess Patent Claims and Prior Art, available at https://patentlyo.com/media/docs/2013/07/model-order-excess-claims.pdf.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

- ***After discovery***, the parties would submit their positions on bifurcating the remaining issues for trial, with the goal of limiting any one trial to a maximum of three patents.

### IBM's Approach Is Preferable To Litigating One Patent At A Time

Proceeding on just one patent at a time (as proposed under "Phase One – Option 1") would prolong litigation and deplete judicial resources. ***First,*** the parties would have to repeatedly address the same issues. For example, if discovery were to proceed under the "Phase One – Option 1" proposal, Zillow's engineers, IBM's representatives, and the parties' experts would be deposed about issues related to the '183 patent. Then, in the next phase of discovery, they would be deposed again on issues related to a second patent. The same process would repeat for each of the 12 patents, resulting in duplicative discovery on similar issues. ***Second,*** it would be nearly impossible to limit discovery to a subset of the accused patents or functionalities. As Zillow's counsel explained during the last hearing, "there's no feasible way for Zillow to slice and dice its source code such that it's producing only code that goes to one accused functionality. Zillow would essentially have to produce its entire code base." July 23, 2020 Hearing Tr. at 10:6-9, Case 2:20-cv-00851-TSZ. ***Third***, proceeding on just one patent at a time would impede settlement discussions and prolong the dispute. Currently, the parties have markedly different views about the merits of the litigation. Those views are unlikely to change based on just one of the 12 patents at issue. Litigating each patent sequentially could result in years of litigation with little prospect of resolution.

### IBM'S Response To The Court's Direction To Provide More Specificity Concerning Why Bifurcating Between The Consumer-Facing And Business-Facing Products Is Not Feasible Or Efficient

The seven Zillow systems that IBM accuses of infringement include both consumer-facing and business-facing systems. The two types of products are, however, tightly integrated: the business-facing systems facilitate the sale of products and services on the consumer-facing systems. Thus, bifurcating discovery or trial between those two interrelated product categories would be

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    infeasible and inefficient.

2    **The Consumer-Facing Products**

3    Zillow's main website is a consumer-facing system designed for use by potential home

4    buyers.[4]  It allows users to search for homes (including newly constructed homes and homes that are

5    owned by Zillow), browse through home listings, view the prices and the estimated values of listed

6    homes, and speak to realtors about purchasing listed homes.  Zillow's mobile applications, which

7    are also consumer-facing systems, allow users to do all of the same things, but from their mobile

8    devices instead of their desktop computers.[5]

9    **Business-Facing Products**

10    Zillow uses its business-facing systems to further monetize its consumer-facing platforms.

11    The business-facing systems allow professionals and businesses (such as realtors and home builders)

12    to purchase advertisements, promote specific communities, sell homes, or connect directly with

13    potential customers on Zillow's consumer-facing website and mobile apps.  For example, Zillow

14    Group Media allows customers to purchase advertisements that will appear on Zillow's consumer-

15    facing products.[6]   Zillow Promoted Communities allows home builders to promote newly

16    constructed homes and subdivisions, so that these homes appear more prominently on Zillow's

17    consumer-facing platforms.[7]  Zillow Offers allows homeowners to sell their homes directly to

18    Zillow, which are then resold on the consumer-facing platforms.[8]  And Zillow Premier Agent allows

19    realtors to connect with potential leads (or the users of Zillow's consumer-facing products) and to

20

21

[4] Zillow's main website is www.zillow.com.

[5] Zillow's mobile applications are described at https://www.zillow.com/mobile/realestate and
https://www.zillow.com/mobile/rentals.

[6] The Zillow Group Media website is https://www.zillowgroupmedia.com.

[7] The Zillow Promoted Communities website is https://www.zillow.com/resources/new-
construction/training/promoted-communities.

[8] The Zillow Offers website is https://www.zillow.com/offers.

JOINT STATUS REPORT - 4
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

be featured more prominently on Zillow's consumer-facing platforms.[9]

**The Products Should Be Addressed Together**

Because Zillow's business-facing products are designed to work together with the consumer-facing products, discovery into infringement of the business-facing products will include how they use and interact with the consumer-facing systems.  Calculating damages for infringement on the business-facing systems will require discovery of financial information related to the consumer-facing systems.  Likewise, because Zillow's consumer-facing products are monetized through the business-facing products, discovery related to damages for the consumer-facing products will include the functionality and value of the business-facing products.

The interactions between the two sets of accused products make it impracticable to litigate the products separately.  If the Court were to proceed under "Phase One – Option 2," for example, discovery of the business-facing products would involve the consumer-facing products that they support.  Then in the next phase of the case, discovery of the consumer-facing products would involve additional discovery regarding how the business-facing products monetize the consumer-facing products.  Retreading fact discovery in this way would needlessly increase expenses and prolong the parties' dispute.  Therefore, in the interest of economy, the Court should adopt a schedule that addresses both consumer-facing and business-facing products together.

Zillow's Position:

IBM's position does not propose phasing or bifurcating this litigation at all. The "bellwether" approach to addressing subject matter eligibility of certain patents before allowing discovery that the Court suggested in footnote 3 of its Minute Order is independent of bifurcation. *See* Dkt. No. 125, at 5 n.3. Indeed, the Court recommended this approach "even if bifurcation of the claims and

---

[9] The Zillow Premier Agent website is https://premieragent.zillow.com.

JOINT STATUS REPORT - 5
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

counterclaims involving the '183 Patent"—as the Court described in Option 1 of its phasing proposals—"is not appropriate." *Id.* IBM's proposal to litigate all patents against all products and revisit the question of bifurcation before trial is not responsive to the Court's "encourage[ment] to propose additional, viable ways of sequencing the myriad claims, counterclaims, and issues involved in this case …" in Option 3 as an alternative to the Phase One options for bifurcation that the Court has proposed.

**Taking distinct claims and issues in turn will be more efficient and less burdensome for the parties and the Court.**

IBM's reasons for continuing to reject any form of bifurcation veer between inconsequential and invented. IBM will not be prejudiced by taking the time required to address claims serially because it licenses all of the patents in suit non-exclusively on a portfolio-wide basis and will be fully compensated by an award of money damages if it ultimately prevails. Doing so will tend to preserve rather than deplete judicial resources whether by producing bellwether outcomes, such as a determination concerning infringement affecting all accused products in suit by a single patent, as in the Court's Option 1; by separately disposing claims and issues that are not common to all of the patents in suit, as in the Court's Option 2; or by prioritizing the resolution of claims involving the most important patents as measured by prior litigation history, as in Zillow's Option 3 below. Under any option, the parties and the Court will be spared the burden of enduring omnibus deadlines, briefing, and hearings, each conjoining voluminous and unrelated issues, and requiring corresponding and frequent departures from the Court's regular limitations to afford full and fair consideration of those issues on the merits.

The predominantly indivisible character of Zillow's source code also does not weigh in favor of taking on all of IBM's claims that different functions of that code infringe different patents at a

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

single go. Whether or not the case is divided, Zillow will make any production of the integrated body of its source code available once, after which IBM may review in connection with any phase of the case to which a part of it may be relevant.

IBM's concern about the potential redeposition of witnesses is equally misplaced. On its own side there are no overlapping inventors among the seven unrelated patents it has joined together in this case. The functionality within Zillow's code base that IBM has respectively accused of infringing each of those patents is largely distinct as well, and so, correspondingly, are the Zillow witnesses who are responsible for developing it. To the extent that any of those witnesses have responsibility for functionality that may overlap between patents, it is a reason to group such patents in the same phase, as with Zillow's proposal to sever the '443 and '904 Patents and join them with the patents directed to similar subject matter in the -1130 case. To the extent such measures do not negate any overlap between the knowledge of Zillow witnesses relevant to different phases of the case, IBM can depose them for all purposes of the case in the first phase in which they may appear.

### Zillow's so-called "business-facing products" should be considered separately.

IBM's arguments about how Zillow Group Media, Zillow Promoted Communities, and Zillow Offers are "integrated" with Zillow's web site and mobile applications underscore the point that Zillow has made repeatedly since IBM amended its complaint to add these "products" to the case in a failed attempt to support its claim to venue in the Central District of California: these labels—as a matter of simple fact that can be verified just by visiting the corresponding URLs that IBM has helpfully included as footnotes 6 through 8 in its section—are *trade names* for *lines of business*, not *products* that embody any apparatus or perform the steps of any method claimed by any of IBM's patents.

In IBM's own words, *supra*, "Zillow uses its business-facing systems"—as IBM calls

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

them—"to further monetize its consumer-facing platforms" by "allow[ing] professionals and businesses (such as realtors and home builders) to purchase advertisements, promote specific communities, sell homes, or connect directly with potential customers on Zillow's consumer-facing website and mobile apps"; "allow[ing] customers to purchase advertisements that will appear on Zillow's consumer-facing products"; and "allow[ing] home builders to promote newly constructed homes and subdivisions, so that these homes appear more prominently on Zillow's consumer-facing platforms." In short, IBM's asserts that these programs generate money by placing promotional content on the Zillow web site and mobile applications that IBM accuses of practicing its claims.

Zillow submits that this claim represents a category mistake as a theory of infringement. Benefiting from an infringement by something else just is not itself infringement of a patent under 35 U.S.C. § 271. Whether Zillow is right in this view is not inextricably intertwined with the question of infringement by the underlying instrumentalities from which the benefit is derived. Such infringement can be assumed for the limited purpose of deciding this question. Yet indulging this assumption for one purpose while at the same time determining if it is true for another likely exceeds the mental flexibility of any finder of fact. It is therefore not only feasible to separate the question of infringement by Zillow's so-called "business-facing-products," but necessary if that question is to be fairly and reasonably determined.

(i)     **Phases of Litigation**

(A)     **Phase One – Option 1**: [resolving the claims and counterclaims involving the '183 Patent (Haas), which is the only patent that all six Zillow systems are accused of infringing;]

Zillow indicates that the case may be bifurcated as provided in Option 1 (Phase 1 resolving claims and counterclaims involving the '183 patent) for the reasons stated in the Court's observations. Zillow proposes that the Court choose this option in the event that it finds, as a

JOINT STATUS REPORT - 8
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

threshold matter, as provided in footnote 3 of the Court's Minute Order, that the '183 patent, but not the '389 or the '789 patents, are directed to eligible subject matter under 35 U.S.C. § 101.

> **(B)** **Phase One – Option 2:** **[resolving the claims and counterclaims involving the three Zillow systems (*i.e.*, Zillow Group Media, Zillow Offers, and Zillow Promoted Communities) accused of infringing only three patents (one of which is the '183 Patent); or]**

Zillow indicates that the case may be bifurcated as provided in Option 2 (Phase 1 resolving claims and counterclaims involving Zillow Group Media, Zillow Offers, and Zillow Promoted Communities for the '183, '389, and/or '789 patents) for the reasons stated in the Court's observations. Zillow proposes that the Court choose this option in the event that it finds, as a threshold matter, as provided in footnote 3 of the Court's Minute Order, that the '183 patent and one or both of the '389 or the '789 patents are directed to eligible subject matter under 35 U.S.C. § 101.

> **(C)** **Phase One – Option 3:** **[the parties are encouraged to propose additional, viable ways of sequencing the myriad claims, counterclaims, and issues in this case, including bifurcating between the consumer-facing and business-facing Zillow systems and/or between liability and damages; and]**

Zillow proposes that, in the event that the Court does not adopt Option 1 or Option 2 above, that the Court resolve the claims and counterclaims involving the '346 and '849 patents in Phase 1 of the litigation. Zillow proposes that the Court choose this option in the event that it finds, as a threshold matter, as provided in footnote 3 of the Court's Minute Order, that none of '183, '389, or the '789 patents are directed to eligible subject matter under 35 U.S.C. § 101.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

3

> **(ii)** <u>**Zillow Premier Agent**</u>**: [separating the claims and counterclaims involving Zillow Premier Agent from Case No. C20-851 and joining them into Case No. C20-1130.]**

4

5

6

7

8

Zillow indicates that the claims and counterclaims involving Zillow Premier Agent may be severed and joined with the -1130 case for the reasons stated in the Court's observations. Zillow proposes that the '443 and '904 Patents also be severed and joined with the -1130 case because IBM's allegations regarding those two patents, like its allegations with respect to three of the patents asserted in the -1130 case (the '193, '676, and '234 Patents), focus on search results.

9

> **(b)     Claim Construction**

10

<u>IBM Statement</u>:

11

12

13

14

15

IBM submits that the parties should comply with Local Patent Rule 132(c).  Rule 132(c) sets forth (1) a procedure for identifying the ten most important disputed claim terms and (2) a procedure for identifying additional claim terms if the parties cannot agree on which ones are the most important.   The parties should follow those procedures, which will address Zillow's professed concerns about claim terms beyond the most important ones.

16

17

18

19

20

IBM does not agree with the substantive arguments that Zillow makes to support its assertion that the 12 claim terms Zillow identifies should be construed.  IBM will address those arguments in its claim construction briefs.  However, based on the fact that Zillow now identifies just 12 claim terms, the parties will be readily able to meet and confer to come up with a list of 10 most important terms pursuant to Rule 132(c).

21

22

IBM contends that the following claim terms are "most important" under Local Patent Rule 132(c).

23

> 1.    '389 patent: "layer(s)"

24

> 2.    '789 patent: "selected elements"

25

> 3.    '789 patent: "unselected elements"

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

4.     '789 patent: "[synchronizing / synchronize] the map display and the list display to concurrently update the selection and deselection of the elements"

5.     '904 patent: "promotion template"

6.     '904 patent: "promotion instance"

7.     '443 patent: "using said at least one search result item"

8.     '183 patent: "condition score value(s)"

9.     '849 patent: "advertising object(s)"

10.    '849 patent: "selectively storing"

IBM identifies its preliminary position on additional claim terms in Exhibit B: IBM's Exchange of Preliminary Claim Construction and Extrinsic Evidence, which was disclosed when the case was pending in the Central District of California pursuant to the then-governing Patent Local Rules concerning claim construction positions.

Zillow's Position:

Zillow submits that the presumption against construing more than ten disputed terms without consideration of the number of patents and claims in suit is arbitrary and capricious, and that the requirement to make a "strong showing" that more than ten claims should be construed in order to exceed this limit is inconsistent with the Federal Circuit's holding in *O2 Micro International, Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008): "When the parties raise an actual dispute regarding the proper scope of [patent] claims [asserted to be infringed], the court, not the jury, must resolve that dispute."

Based on IBM's infringement contentions as Zillow presently understands them, Zillow submits that the parties have "'fundamental dispute[s] regarding the scope'" of at least twelve claim terms in view, for example, of prior constructions, prosecution disclaimers, definitional statements, coinages, and specialized meanings in the art, that would not be resolved "by instructing the jury that the claims should be given their plain and ordinary meaning," as well as of

JOINT STATUS REPORT - 11
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

1  at least another five for which such a determination would not resolve the parties' dispute without

2  an accompanying rejection of constructions proposed by IBM.  *Eon Corp. IP Holdings v. Silver*

3  *Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (quoting *O2 Micro*, 521 F.3d at 1362

4  (Fed.Cir. 2008)).

5      **Zillow's Terms for Construction**

6      *'849 Patent*

7      (1)   "selectively storing advertising objects at a store established at the reception

8            system" (Claims 1, 13, 14): This term should be construed at least because it was

9            the subject of a construction by the District of Delaware that IBM is now estopped

10           from relitigating. *See IBM v. The Priceline Group, et al.*, No. 1-15-cv-00137, Dkt.

11           No. 234, at 19–21 (D. Del. Oct. 28, 2016) (construing term as "pre-fetching

12           advertising objects and storing at a store established at the reception system in

13           anticipation of display concurrently with the applications.").  This term was also the

14           subject of multiple disclaimers during prosecution. For example, IBM argued:

15

16                  To further reduce the likelihood of application presentation
                    delay, the inventors included steps in their method **for**
17                  **selectively storing advertising and application objects at**
                    **the user reception system** so that when advertising was to be
18                  presented, its data might be found available at the reception
                    system without going back to the host (6:7–12, 14:32-15:23).
19                  The inventors included steps in their method for storing and
                    managing application and advertising objects so that
20                  **application and advertising objects could be separately**
                    **pre-fetched from the network** and cached at the reception
21                  system in anticipation of being called for presentation (6:13–
                    33, 16:16–24). In other words **applications and advertising**
22                  **are separate entities and they travel separately to the**
                    **reception system.**
23
                    Request for Rehearing, April 29, 2002, at 3–4 (emphasis by IBM). Zillow believes
24
                    that construction of this term consistent with the District of Delaware's construction
25

JOINT STATUS REPORT - 12
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

and/or IBM's prosecution arguments would be dispositive of IBM's claims of infringement at least because Zillow's systems deliver the content that IBM accuses of being advertising at the same time as the content that IBM accuses of being applications.

**'346 Patent**

(2)     "distributed data processing system" (claim 1): This term should be construed because Zillow contends that it is a technical term of art whose specialized meaning to a person of skill in the art in the field of the patent would not be known to a lay juror. For example, the *IBM Computing Dictionary* defines "distributed processing" as "synonymous with distributed data processing," and as including "processing in which application transaction programs distributed among interconnected processors cooperate to perform distributed applications." The patent specification accordingly describes "the present invention" as motivated by "the frustration that is caused by having to authenticate to multiple domains for a single transaction." Zillow believes that construction of this term according to this technical sense would be dispositive of IBM's claims of infringement at least because Zillow does not provide the authentication features IBM has accused in connection with transactions that are distributed across domains.

(3)     "federated computing environment" (claim 1): This term should be construed because it is expressly defined in the patent specification. *See* Col. 10, ll. 63–65 ("In the context of the present invention, a federation is a set of distinct entities, such as enterprises, organizations, institutions, etc., that cooperate to provide a single-sign-on, ease-of-use experience to the user."). The Federal Circuit elaborated on this definition in *IBM v. Iancu*, 759 Fed. Appx. 1002, 1007–08 (Fed. Cir. 2019) ("We

JOINT STATUS REPORT - 13
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

conclude that a 'federated computing environment' requires a plurality of distinct enterprises."). IBM has further argued during IPR proceedings, for example, that this term excludes the circumstance where "for a given federation, each service provider can only access that federation through *one* authentication broker" and "*has a single trust relationship with one and only one federation member []* with which the SP has a signed business agreement." Patent Owner Preliminary Response, *Expedia, Inc. et al. v. IBM*, IPR2019-00404, Dkt. No. 7, at 23 (April 18, 2019) (emphasis by IBM). Zillow contends that construction of this term consistent with such arguments would be dispositive of IBM's infringement claims at least because the Google and Facebook sign-on services IBM has accused each constitute distinct federations under the patent's express definition within which Zillow has a single trust relationship with a single authentication provider.

(4)    "single-sign-on operation" (claims 1–4): This term should be construed in view of its interpretation by the Federal Circuit in *Iancu*:

> It is undisputed before us that, under those definitions, a user 'perform[s]' an authentication when the user takes an action that provides credentials, or that plays a role in launching a provision of credentials on the user's behalf, to obtain access to resources. A 'single-sign-on operation' thus is one that does not require the user to take such action to gain access to a second entity's resources after the user has been authenticated with a first entity.

759 Fed. Appx. at 1009. In the original patent prosecution, IBM likewise distinguished art in which "the client [] is an active participant in the single-sign-on process" on the ground that when "the SSO operation is carried out within the context of the claimed 'first system and a second system interact[ing] within a federated computing environment,' … the client computer does not participate in

1

2   the authentication/single-sign-on other than passively transmitting protocol

3   information that is then received by a back-end server …. In other words, in a

4   federated environment the client is passive." Applicant Remarks, Feb. 13, 2009, at

5   6. For at least these reasons, Zillow believes that a proper construction of this term

6   would be dispositive because a user who has previously authenticated with Google

7   or Facebook must take affirmative actions to provide credentials and gain access to

8   account features on Zillow.

9   **'443 Patent**

10  (5)     "Internet search" (claim 1): During prosecution, IBM amended claim 1 of the '443

11          patent to substitute "an Internet search" for "an information repository search" to

12          "identify and clarify that the process is for an Internet search," (Amendment and

13          Remarks, March 17, 2003, at 7), in response to a rejection asserting that

14          "Applicant's invention is not implemented with any specific automated computer

15          apparatus," (Non-Final Rejection, Dec. 23, 2002). In support, IBM cited disclosure

16          that it characterized as stating that "the resultant search result items from a search

17          engine performing an Internet search are utilized." Amendment and Remarks,

18          March 17, 2003, at 7 (citing filed specification, p.7, ll. 14–17 (issued patent Col. 4,

19          ll. 56–58)). The patent specification gives "yahoo.com" and "ibm.com/java" as

20          examples of "Internet search engines." Col. 4, ll. 64–65. The parties dispute

21          whether these and other arguments and disclosures limit the "Internet search" of the

22          claims to a search encompassing results from multiple domains on the Internet, or

23          also includes searches of a single domain. Zillow believes that construction of this

24

25

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

term could be dispositive of infringement because IBM has only accused searches that are limited to the contents of Zillow's own servers.

(6)     "search result item" (claims 1, 15): Also during prosecution, IBM distinguished prior art by equating the "search result item" of claim 1, which expressly recites an "Internet search," with the same term in issued claim 15 (then pending as claim 16), which does not: "In contrast, claim 16 uses the results of an Internet search, the '*search result items*,' as inputs to a search of a repository of advertisements." Appeal Brief, May 4, 2004, at 8 (emphasis by IBM). Zillow believes that this disclaimer is dispositive of claim 15 for the same reason as the incorporated limitation to an "Internet search" expressly recited in claim 1.

### '389 Patent

(7)     "layers" (claims 1–3, 8–9, 11–14): During prosecution, IBM distinguished organizing objects themselves into layers from providing each object with "*at least one parameter associated therewith which quantifies certain characteristics of the object.*" *See, e.g.*, Remarks, November 7, 2003, at 11 (emphasis by IBM). Zillow believes that this and like prosecution distinctions distinguish between data organized as layers corresponding to categories of objects, and data corresponding to objects of a single category, like the property records that IBM has accused of infringing, that may be filtered, sorted, and displayed according to the values given to different attributes.

(8)     "objects" (claims 1–5, 8, 9, 11–16): During prosecution, IBM argued that its claimed "objects" correspond to components of a business computing system. *See, e.g.*, Remarks, Nov. 7, 2003, at 13, 16 ("Applicant's objects … represent '*various*

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*components ... that comprise [a] business system*'" (emphasis by IBM)); Remarks, March 3, 2004, at 11 ("Applicant's claimed invention displays objects that correspond to computer components ...."). Construction of this term is required to determine whether IBM has disclaimed the representations of real properties it has accused of infringement from the scope of this term.

### '904 Patent

(9)    "promotion instance" (1–5, 10): During prosecution, IBM repeatedly defined the term "promotion instance" with reference to the specific example given in the preferred embodiment disclosed in the patent specification and distinguished this term, *inter alia*, from a "sales promotion based on 'a price change, timing information, article information, store location, or any other information related to the promotion to be implemented.'" Remarks, Dec. 17, 2008 (quoting prior art). Construction of this term is required to determine whether IBM has disclaimed the accused records in Zillow's database containing information about specific properties listed for sale with these arguments.

(10)   "promotion list" (1): This claim should be construed because it is expressly defined in the '904 patent: "A promotion list is a collection of one of more promotion instances and can be used where ever individual promotion instances are used (e.g., for promotion assignment to target groups). The promotion list includes promotion list attributes 350. Promotion list attributes 350 include a unique promotion list name 352 and a promotion list description 354." Col. 16, ll. 17–23. Zillow believes construction of this term according to this definition would preclude IBM's theory of infringement because the property search results that it accuses of being the

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

"promotion list" in Zillow's products is not interchangeable with the individual search results that it accuses of being "promotion instances," cannot be used to assign "promotions" (which the patent defines as synonymous with "offers" and as "limited to refer to specific marketing communications that are typically provided in a marketing campaign," (Col. 2:51–54)) to target groups, and lack either a unique name or a description.

### '789 Patent

(11)     "unselected elements" (claims 1, 8, 15): During prosecution, IBM amended these claims "to recite a selection area smaller than the viewing area of the map display, displaying elements within the selection area in a selected state, and displaying elements outside the selection area, but within the viewing area, in a deselected state." Remarks, Feb. 5, 2014. Construction of this term is required to determine if, contrary to IBM's theory of infringement, such amendments and arguments disclaimed "unselected elements" that are not displayed simultaneously with and in a visually distinguishable state from "selected elements."

### '183 Patent

(12)     "image data" (claims 1, 11, 20): The '183 patent refers to "image data systems for retrieving image data (e.g., a video stream, still video images, etc.) from, inter alia, cameras (e.g., traffic cameras, security cameras, personal cameras, etc.), social networking Websites, etc." Col. 3, ll. 7–12. Under the heading "Capturing image data," it states: "The images may be captured from, inter alia, traffic cameras, security cameras, personal cameras, etc. The images may be stored in a database (e.g., within image data systems and/or memory system 8)." Col. 3, ll. 44–57. The

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

parties dispute whether these and other disclosures define "image data" as data that encodes images, which Zillow's systems do not compare to each other as the '183 patent requires.

**IBM's "Most Important" Terms**

IBM's list of "most important" terms further demonstrates why construction of more than ten terms is required in this case. IBM has identified five terms as being "most important" that are not on the list of terms that Zillow contends the court is required to construe under the standard in *O2 Micro*, namely:

1. '789 patent: "[synchronizing / synchronize] the map display and the list display to concurrently update the selection and deselection of the elements"

2. '904 patent: "promotion template"

3. '443 patent: "using said at least one search result item"

4. '183 patent: "calculating . . . condition score values associated with said plurality of locations"

5. '849 patent: "advertising object(s)"

IBM has not shown why it contends these terms should be construed, but Zillow agrees that the parties have a fundamental dispute about their scope that cannot be resolved by leaving the terms unconstrued without affirmatively rejecting IBM's constructions and preventing it from arguing them to the jury under the guise of plain meaning. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (holding that the trial resolved a dispute about a term by rejecting one party's construction and then preventing its expert from repeating to the jury that the claims required the construction it rejected).

**(c)    Claim Construction Scheduling**

IBM's Position:

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

*Case No. C20-851*:  IBM proposes that the parties file the joint claim construction and prehearing statement thirty days after the Court enters a scheduling order.

*Case No. C20-1130*:  IBM proposes that:

- IBM will serve its infringement contentions in the -1130 case under Local Civil Rule 120 within thirty days of entry of a scheduling order in the -851 case,

- Zillow will serve its Non-Infringement and Invalidity Contentions in the -1130 case under Local Civil Rule 121 within thirty after IBM serves its infringement contentions.

- All subsequent patent local rule deadlines in the -1130 case will be stayed pending resolution of the -851 case.

Consistent with the Court's guidance to "put your cards on the table first," (July 23, 2020 Hearing Tr. at 8, Case 2:20-cv-00851-TSZ), IBM proposes that IBM should serve infringement contentions in the new -1130 case before discovery proceeds in the -851 case.  IBM submits that the parties should disclose other patent contentions at the onset of the case, including contentions about infringement, non-infringement, and invalidity.  Early disclosure of those contentions will provide transparency and ensure that the parties are consistent throughout the litigation.  It may also lead to avenues for increased judicial efficiency if, for example, Zillow relies on the same prior art in both actions.

Zillow's Position:

*Case No. C20-851*: Zillow proposes that the joint claim construction and prehearing statement be filed, after any threshold § 101 practice, thirty days after a phasing option commences respecting only the patents that are the subject of that phase. It would frustrate the purpose of bifurcation to require the parties to submit a joint claim construction and prehearing statement addressed to disputed terms of bifurcated patents.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Case No. C20-1130*: Zillow proposes that IBM serve its infringement contentions under Local Civil Rule 120 within thirty days of entry of a scheduling order in the -851 case, and in any event as a prerequisite to receiving discovery under any phasing option, and that all subsequent patent local rule deadlines in the -1130 case be stayed pending resolution of the -851 case.

It would be unduly burdensome and interfere with the parties' prosecution of the -851 case to require Zillow to simultaneously prepare invalidity and noninfringement contentions following IBM's tender of infringement contentions in the -1130 case when that case is to be otherwise stayed. The purpose of requiring IBM to serve infringement contentions in the –1130 case despite the agreement of the parties and the Court to stay that case pending resolution of the -851 case is to prevent IBM from using discovery that it might obtain in the -851 case to frame its infringement contentions in the -1130 case when and if the stay in that case is ultimately lifted.

IBM has indicated that it would experience little burden in being required to tender infringement contentions in the -1130 case in order to be permitted to obtain discovery in the -851 case in view of having already prepared the charts for representative claims that it attached to its complaint. By contrast, searching for and charting prior art and preparing noninfringement contentions for the five new patents asserted in the -1130 case would be a substantial and expensive effort for Zillow that would compete with the needs of the ongoing -851 case for the attention of its attorneys for no immediate purpose. IBM's claim that requiring Zillow to do so would serve the interests of efficiency and consistency in the overall course of the litigation makes no sense because the patents asserted in the two suits are not related to each other.

**(d)    Patentability:**

IBM's Position:

**(i)      which, if any, patent claims are subject to challenge under 35 U.S.C. §**

**101**

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1   Zillow has informed IBM that it contends that each of the '183, '389, '789, '346, '904, and

2   '443 Patents in the -851 case are subject to challenge under 35 U.S.C. § 101.  Zillow has informed

3   IBM that Zillow additionally believes that each of the patents asserted in the -1130 case is subject

4   to challenge under § 101.  The parties understand the Court's inquiry to the parties to be directed at

5   the patents asserted in the -851 case and have responded to the remaining subsections accordingly.

> **(ii)** **whether any of the patent claims identified in answer to Paragraph 5(d)(i) contain terms as to which other than a dictionary definition should be ascribed and, if so, what are those meanings**

9   IBM contends that all of the patent claims identified in answer to Paragraph 5(d)(i) contain

10  terms as to which other than a dictionary definition should be ascribed.  IBM contends that the

11  following terms are the "most important" terms pursuant to Local Patent Rule 132(c).

- '389 patent: "layer(s)" means "categories of related objects"
- '789 patent: "selected elements" means "elements identified in response to a user input that are distinguished in any manner from unselected elements"
- '789 patent: "unselected elements" means "elements, such as deselected elements, that are not selected"
- '789 patent: "[synchronizing / synchronize] the map display and the list display to concurrently update the selection and deselection of the elements" means "[updating / update] automatically the map display and the list display to concurrently update the selection and deselection of the elements"
- '904 patent: "promotion template" means "an object with customizable attribute fields that the user can choose so as to produce other promotion templates, promotion instances, or promotion versions"

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

- '904 patent: "promotion instance" means "a specific marketing communication generated from promotion templates using parameterized standard attributes and/or static attributes"

- '443 patent: "using said at least one search result item" means "by inputting a keyword from said at least one search result item"

- '183 patent: "condition score values(s)" means "score(s) assigned to discrete elements within an image aligned to categories representative of various environmental conditions "

IBM contends that additional claim terms should be construed as identified in IBM's Exchange of Preliminary Claim Construction and Extrinsic Evidence, which was disclosed when the case was pending in the Central District of California pursuant to then-governing Patent Local Rules concerning claim construction positions. *See* Exhibit B.

> **(iii)    whether, with respect to any of the patent claims identified in answer to Paragraph 5(d)(i), the § 101 inquiry involves a factual dispute and, if so, what is the nature of the factual dispute**

IBM contends that for all of the patent claims identified in answer to Paragraph 5(d)(i), the § 101 inquiry involves factual disputes as follows.

## <u>'183 patent</u>

Whether the "development of the patented invention, including the problems present in prior art" and the "specific allegations directed to improvements and problems solved" in the First Amended Complaint, Case 2:20-cv-00851-TSZ Dkt. # 40 ¶¶ 46-55, demonstrate that the claims are patent eligible. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) (internal quotes omitted).

Whether the claimed methods for classifying geographical image data are directed to a

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

computer-specific manner for "how" to interpret image data, such as by ingesting an image and interpreting patterns in pixel data, in order to view an image in a manner that a human cannot. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).

Whether the claims are limited to particular types of image classifiers that "improve[] the relevant technology" and do not preempt other ways of ingesting and scoring image data. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed. Cir. 2016).

Whether the "combination of elements" that make up the claimed method for classifying geographical image data, such as combining the real-time ingestion of image data, comparing the ingested image data to a set of baseline measurement values within stored image data, and calculating both individual condition score values and an overall condition score value based on this comparison, was not "well-understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

## '389 patent

Whether the "development of the patented invention, including the problems present in prior art" and the "specific allegations directed to improvements and problems solved" in the First Amended Complaint, Case 2:20-cv-00851-TSZ Dkt. # 40 ¶¶ 63-71, demonstrate that the claims are patent eligible. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) (internal quotes omitted).

Whether the claimed methods of displaying layered data using non-spatially distinguishable display attributes are directed to a specific manner for "how" to distinctly display a large set of objects on a graphical user interface in a way that a human cannot. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).

Whether the claims are limited to particular types of graphical user interfaces that "improve[] the relevant technology" and do not preempt other ways of displaying objects on a

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

computer display.  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed. Cir. 2016).

Whether the combination of elements that make up the claimed method for displaying layered data, such as combining the organization of objects into layers, applying non-distinguishable display attributes to each layer, and applying a display emphasis of one layer over the other layers, was not "well-understood, routine and conventional to a skilled artisan in the relevant field."  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

### '789 patent

Whether the "development of the patented invention, including the problems present in prior art" and the "specific allegations directed to improvements and problems solved" in the First Amended Complaint, Case 2:20-cv-00851-TSZ Dkt. #40 ¶¶ 56-62, demonstrate that the claims are patent eligible.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) (internal quotes omitted).

Whether the claimed method of selecting a customized area of a map display in order to update the selections in both the map and a list display is directed to a computer-specific manner for "how" to present and manage geospatial data in a way that a human cannot.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).

Whether the claims are limited to particular types of graphical user interfaces that "improve[] the relevant technology" and do not preempt other ways of displaying geospatial information on a display device.  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed. Cir. 2016).

Whether the "combination of elements" in the claimed methods for filtering and presenting geospatial data in response to a user interaction, such as (1) receiving a user input drawing on a map in a user determined shape, (2) selecting any unselected elements within that drawing and

JOINT STATUS REPORT - 25
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    deselecting those outside the drawing, and (3) synchronizing the map display and the list display to

2    concurrently update the selection and deselection of the elements was not "well-understood,

3    routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v. HP Inc.*, 881

4    F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

5                                          **'346 patent**

6            Whether the "development of the patented invention, including the problems present in

7    prior art" and the "specific allegations directed to improvements and problems solved" in the First

8    Amended Complaint, Case 2:20-cv-00851-TSZ Dkt. # 40 ¶¶ 44-45, demonstrate that the claims are

9    patent eligible. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127

10   (Fed. Cir. 2018) (internal quotes omitted).

11           Whether the claimed methods for dynamically creating user accounts as part of single-sign

12   on operations to enable access to protected resources claim a computer-specific manner for "how"

13   to manage user authentication in a way that a human cannot. *DDR Holdings, LLC v. Hotels.com,*

14   *L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).

15           Whether the methods claimed by the patent are patent eligible because they are limited to

16   particular ways of managing user authentication that "improve[] the relevant technology" and do

17   not preempt other ways of allowing users to "sign on" to a service provider. *McRO, Inc. v. Bandai*

18   *Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed. Cir. 2016).

19           Whether the "combination of elements" that in the claimed user authentication

20   management method, such as (1) systems in a federated computing environment that (2) support

21   single-sign on operations in order to provide access to protected resources (3) by receiving a user

22   identifier from the first system at the second system (4) and creating a user account based in part

23   on that user identifier prior to providing access to the protected resources, was not "well-

24   understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v.*

25   *HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    Whether the factual issues that precluded a ruling on the motion to dismiss in the *Priceline*

2    litigation continue to preclude a ruling on the merits today. *Int'l Bus. Machs. Corp. v. The*

3    *Priceline Grp., Inc.*, No. CV 15-137-LPS-CJB, 2016 WL 626495, at *14-19 (D. Del. Feb. 16,

4    2016), *report and recommendation adopted sub nom. Int'l Bus. Machines Corp. v. Priceline Grp.*

5    *Inc.*, No. CV 15-137-LPS-CJB, 2016 WL 1253472 (Mar. 30, 2016).

6                                              **'904 patent**

7    Whether the "development of the patented invention, including the problems present in

8    prior art" and the "specific allegations directed to improvements and problems solved" in the First

9    Amended Complaint, Case 2:20-cv-00851-TSZ Dkt. # 40 ¶¶ 81-88, demonstrate that the claims are

10   patent eligible. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127

11   (Fed. Cir. 2018) (internal quotes omitted).

12   Whether the claimed "promotion templates," "promotion instances," and "promotion

13   management lists," as properly construed, comprise a computer-specific manner for "how" to

14   execute a "promotion management campaign" in a way that a human cannot. *DDR Holdings, LLC*

15   *v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).

16   Whether the claimed inventions "improve[] the relevant technology" by increasing the

17   efficiency in the transfer of promotions through generating and sending blocks of relevant

18   promotions in response to a customer's query (instead of sending individual promotions), and

19   dynamically updating the list and the promotions as the promotion status and the user's query

20   changes over time. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed.

21   Cir. 2016).

22   Whether the "combination of elements" for "producing . . . a promotion list for a promotion

23   management campaign" by "generating . . . a promotion instances from a promotion template," as

24   properly construed, using the claimed method steps of "receiving . . . ," "searching . . . ,"

25   "returning . . . ," "receiving . . . ," "assigning . . . ," and "storing . . ." was not "well-understood,

JOINT STATUS REPORT - 27
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

1  routine and conventional to a skilled artisan in the relevant field." *Berkheimer v. HP Inc.*, 881 F.3d

2  1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

3                                          **'443 patent**

4          Whether the "development of the patented invention, including the problems present in

5  prior art" and the "specific allegations directed to improvements and problems solved" in the First

6  Amended Complaint, Case 2:20-cv-851-TSZ Dkt. # 40 ¶¶ 72-80, demonstrate that the claims are

7  patent eligible. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127

8  (Fed. Cir. 2018) (internal quotes omitted).

9          Whether the claimed methods of associating advertisements with search results rather than

10  search queries in the manner claimed by the patent comprise a computer-specific manner for "how"

11  to generate results in a way that a human cannot. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d

12  1245, 1258-59 (Fed. Cir. 2014).

13          Whether the claimed methods for associating advertisements "improve[] the relevant

14  technology" because it allowed for a more efficient and less resource-intensive way of locating

15  relevant advertisements from an advertisement repository in a way that did not preempt other ways

16  of searching for advertisement relevant to the user. *McRO, Inc. v. Bandai Namco Games Am. Inc.*,

17  837 F.3d 1299, 1314-16 (Fed. Cir. 2016).

18

19          Whether the "combination of elements" in the claimed method for targeting associated

20  advertisements, such as combining searching for associated advertisements using the search result

21  item selected by a user, identifying associated advertisements that have a word in common with the

22  search result item, and correlating the search result and associated advertisement, was not "well-

23  understood, routine and conventional to a skilled artisan in the relevant field." *See Berkheimer v.*

24  *HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

25          **(iv)    what materials, if any, other than the patents and prosecution history,**
              **must be considered in any § 101 analysis;**

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

The following materials, other than the patents and prosecution history, must be considered in any § 101 analysis.

- The factual allegations in IBM's First Amended Complaint and any future amendments thereto.

- The Court's construction of the challenged claims.

- Written and documentary discovery concerning the patents-in-suit and the accused products.

- Testimony from relevant witnesses, including inventors of the patents-in-suit, developers of the accused products, and expert witnesses.

IBM addresses these issues in greater detail in Exhibit A: IBM's Supplemental Brief To Show Cause Why The Court Should Not Address Patentability On The Merits Before The Close Of Fact Discovery.

> **(v)     which, if any, Supreme Court and/or Federal Circuit decisions discuss the patentability of claims similar to those identified in answer to Paragraph 5(d)(i).**

IBM contends that the following Supreme Court and/or Federal Circuit decisions discuss the patentability of claims similar to those identified in answer to Paragraph 5(d)(i).  IBM expects to identify additional decisions after Zillow identifies its arguments on patent-eligibility with specificity.

### '183 Patent

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) ("[T]he claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events . . . .") as interpreted by, for example, *ART+COM Innovationpool GmbH v. Google Inc.*, 183 F. Supp. 3d 552, 559-60

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1 (D. Del. 2016) ("ACI has claimed more than the abstract idea of storing image data, then

2 repeatedly requesting specific data, which is then stored and displayed . . . As an ordered

3 combination, this iterative process allows a user to access more electronic pictorial data in a more

4 rapid fashion . . . Claim 1 recites a specific way of overcoming a problem which plagued prior art

5 systems. This specific solution, like that found in *DDR Holdings*, demonstrates a sufficient

6 inventive concept.").

7     *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368, 1375 (Fed. Cir. 2019),

8 *aff'd in part, rev'd in part on other grounds*, 930 F.3d 1295 (2019) ("The claims are directed to

9 using a specific technique—using a plurality of network monitors that each analyze specific types

10 of data on the network and integrating reports from the monitors—to solve a technological

11 problem arising in computer networks.").

12 **'389 Patent**

13     *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018)

14 ("These limitations disclose a specific manner of displaying a limited set of information to the

15 user, rather than using conventional user interface methods to display a generic index on a

16 computer. Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these

17 claims recite a specific improvement over prior systems, resulting in an improved user interface for

18 electronic devices.") as interpreted by, for example, *Local Intelligence, LLC v. HTC Am., Inc.*, No.

19 5:17-cv-06437-EJD, 2018 WL 1697127, at *7 (N.D. Cal. Apr. 6, 2018) ("Here, the claims recite a

20 specific manner of limiting the information which should be displayed. . . . As such, the claims at

21 issue do more than simply state a result (i.e., display communication services according to current

22 location); they also recite the way in which it is accomplished (i.e., using location retrieved from

23 the location server and functions stored in the datastore).  Accordingly, because the specific

24 improvement to the technology of user interfaces claimed in *Core Wireless* was not an abstract

25 idea, the Court must conclude that the similarly specific improvement to user interfaces claimed

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

here is also not an abstract idea.").

### '789 Patent

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018)
("These limitations disclose a specific manner of displaying a limited set of information to the
user, rather than using conventional user interface methods to display a generic index on a
computer. Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these
claims recite a specific improvement over prior systems, resulting in an improved user interface for
electronic devices.") as interpreted by, for example, *Park Assist, LLC v. San Diego Cty. Reg'l
Airport Auth.*, 402 F. Supp. 3d 956, 961-62 (S.D. Cal. 2019) ("There, much like Park Assist's
improved GUI, the patent's claims were 'directed to an improved user interface for computing
devices.' . . . [H]ere, Park Assist's patent discloses a particular manner of presenting parking
occupancy information via its GUI—through an improved arrangement of thumbnail images and
occupancy indications used for 'tuning ... the automatic detection algorithm.' . . . The described
improvements to prior art parking guidance systems—the improved GUI, correcting algorithm,
and collocated imaging/indicator structure—adequately demonstrate that the '956 Patent's claims
are patent-eligible under step one of *Alice*.").

### '346 Patent

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) ("[T]he
claims at issue here specify how interactions with the Internet are manipulated to yield a desired
result—a result that overrides the routine and conventional sequence of events . . . .") as interpreted
by, for example, *Int'l Bus. Machs. Corp. v. The Priceline Grp., Inc.*, No. CV 15-137-LPS-CJB, 2016
WL 626495, at *14-19 (D. Del. Feb. 16, 2016), *report and recommendation adopted sub nom. Int'l
Bus. Machines Corp. v. Priceline Grp. Inc.*, No. CV 15-137-LPS-CJB, 2016 WL 1253472 (Mar. 30,
2016) (denying defendant's motion to dismiss the '346 Patent on grounds of patent eligibility).

### '904 Patent

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) ("Similarly, the method of claim 1 employs a new kind of file that enables a computer security system to do things it could not do before.").

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) as interpreted by, for example, *Hypermedia Navigation LLC v. Facebook, Inc.*, No. 17-cv-05383-HSG, 2018 WL 3932434, at *4-5 (N.D. Cal. Aug. 16, 2018) ("[T]he present invention improves a specific online search mechanism by creating web programs that are geared towards entertaining and presenting the user with desirable information in a new way . . . [T]he present invention 'addresses the need for creating and navigating entertaining Web programs that filter out unwanted information and present desired information in a series of linearly linked web sites.' This improvement is captured in the representative claims, and is sufficient to show at this stage that the Asserted Patents claim more than 'well-understood, routine, and conventional activities.'") (citations omitted).

## '443 Patent

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) ("[T]he claims at issue here specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events . . . .") as interpreted by, for example, *Improved Search LLC v. AOL Inc.*, 170 F. Supp. 3d 683, 694 (D. Del. 2016) ("The method of the '101 patent provides a specific series of steps designed to optimize search results and retrieve target language URLs or documents using search engine queries on the Internet.  The steps include extracting content words from a query, performing dialectal standardization of the words, and translation . . . As in *DDR*, the 'claims at issue here specify how interactions with the Internet are manipulated to yield a desired result.' . . . The '154 patent recites similar steps for translingual searching and adds the concept of searching a database of advertising to return advertising targeted

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  to the content word . . . The court concludes that the solution provided by the patents at issue is not

2  a "routine and conventional" use of computer and Internet technology.").

3      *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019), *cert. denied sub*

4  *nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907 (2020) ("As noted above, Cellspin

5  specifically alleged that . . . the claimed combination of steps [was inventive]—sharing data only

6  after a certain step is performed, using HTTP at another particular step, etc. . . . It pointed to evidence

7  suggesting that these techniques had not been implemented in a similar way.") ("Cellspin's asserted

8  claims . . . recite a specific, plausibly inventive way of arranging devices and using protocols rather

9  than the general idea of capturing, transferring, and publishing data.").

10     **IBM is DIRECTED to show cause, either in the forthcoming Joint Status Report or in**

11 **the brief permitted by Paragraph 6, below, why the Court should not address patentability,**

12 **either in advance of or in conjunction with claim construction, as to one or more of the patents-**

13 **in-suit in Case No. C20-851 and/or Case No. C20-1130, and prior to any disclosure by Zillow**

14 **of its source code or other technical or financial information.**

15     IBM addresses this issue in Exhibit A: IBM's Supplemental Brief To Show Cause Why

16 The Court Should Not Address Patentability On The Merits Before The Close Of Fact Discovery.

17     <u>Zillow's Position</u>:

18     (i)     Zillow contends that each of the '183, '389, '789, '346, '904, and '443 Patents are

19 subject to challenge under 35 U.S.C. § 101. Zillow additionally believes that each of the patents

20 asserted in the -1130 suit is subject to challenge under § 101, but understands the Court's inquiry

21 to the parties to be directed at the patents asserted in the -851 suit and has responded to the

22 remaining subsections accordingly.

JOINT STATUS REPORT - 33
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1   *(ii)*      Zillow does not believe that any patent claims identified in answer to Paragraph

2   5(d)(i) contain terms that need to be construed for the purpose of ruling on those patents' validity

3   under 35 U.S.C. § 101. IBM has failed to explain why any of the constructions identified above or

4   among the preliminary constructions it disclosed previously in the litigation would limit any

5   otherwise abstract element of the asserted claims to a particular solution to a technological problem

6   in the field of any asserted patent.

7          While, in another case, a motion to dismiss the '346 Patent under § 101 was denied without

8   prejudice to re-raising the argument after claim construction, that denial assumed constructions of

9   the terms "single-sign-on" and "federated computing environment" that are different from the ones

10  that IBM has proposed in this case. *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, No. CV

11  15-137-LPS-CJB, 2016 WL 626495, at *18 (D. Del. Feb. 16, 2016) ("The Court has relied on

12  proposed constructions put forward by Plaintiff (that may or may not later be adopted) to guide its

13  step one analysis."), *report and recommendation adopted sub nom. Int'l Bus. Machines Corp. v.*

14  *Priceline Grp. Inc.*, No. CV 15-137-LPS-CJB, 2016 WL 1253472 (D. Del. Mar. 30, 2016). The

15  claim constructions that IBM has proposed for those terms here a not among the top ten terms it has

16  proposed for construction[10] and do not supply any technological means for practicing what Zillow

17  contends is the abstract idea of automatically creating a user account during an otherwise avowedly

18

19

20

---

21  [10] In preliminary exchanges of constructions under the then-operative Northern District of California
    Local Patent Rules prior to the transfer of this case, IBM proposed to construe "single-sign-on

22  operation" as "a process by which a user is authenticated at a first entity and subsequently not
    required to perform another authentication before accessing a protected resource at a second entity,"

23  and a "federated computing environment" as a "loosely coupled affiliation of a plurality of distinct
    enterprises which adhere to certain standards of interoperability; the federation provides a

24  mechanism for trust among those enterprises with respect to certain computational operations for the
    users within the federation." Such references to unidentified "processes," "standards," and

25  "mechanisms" do not limit the claims to any particular technological solution for respectively
    achieving the ultimate results of authentication, interoperability, and trust.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

conventional single-sign-on operation. The Court may therefore assume those constructions without affecting its determination of the patentability of the '346 patent under § 101.

Moreover, subsequent Federal Circuit authority calls into question the Delaware Court's conclusion that "the utilization of SSO technology to automatically create user accounts at a service provider, in order to provide access to a protected resource" was a potentially non-abstract idea. *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682, at *3 (Fed. Cir. June 19, 2020) (Finding that claim directed to "(1) associating a security level with a data resource, (2) associating a security level with a mode of identification of a user, and then (3) ensuring that the user's security level is sufficiently high to meet the security level of the data resource to access the data resource" invalid under § 101.)

(iii)    Zillow does not believe that the § 101 inquiry for any of the patents identified in response to Paragraph 5(d)(i) involves a factual dispute.

IBM fails to identify any of the supposed factual allegations in its Amended Complaint that show how any of the alleged "improvements and problems solved" by the inventors of any of the asserted patents impart an inventive concept *to the claims*. *See Aatrix*, 882 F. 3d at 1127 (finding that the allegations of the complaint purported to show that the use of a "data file" instead of a database *in the specific context recited in the claims* was unconventional in comparison with prior art solutions). The allegations IBM cites here assert, for example, that the inventors of the '183 patent solved the "need for a computer with the ability to evaluate … images in order to gain an 'intuitive' sense of a particular area without relying on human users to label the data" by "turn[ing] to A[rtificial] I[ntelligence] and machine learning." Dkt. 40 ¶ 51. But neither the '183 patent claims or its specification make any references to machine learning or AI, or suggest any other technological means for a computer to perform the recited step of "comparing … image data to … to a plurality of

JOINT STATUS REPORT - 35
(Case Nos. 2:20-cv-00851-TSZ; 2:20-cv-01130-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

stored image data," which on its face includes using the exercise of human judgment on which IBM's Amended Complaint asserts that the inventors of '183 patent sought to improve.

IBM's repeated suggestion that whether the patent claims are directed toward various methods of processing data with computers "to generate results in a way that humans cannot" presents a factual question relevant to patentability misunderstands the holding of the Federal Circuit's decision in *DDR Holdings* that IBM cites. Computers characteristically produce results that humans cannot by virtue by processing data in ways that exceed human speed, accuracy, patience, memory, and the like. *DDR Holdings* is clear that using a computer to perform such tasks is not patent eligible. *See* 773 F. 3d at 1256. Rather, it is unconventional methods of programming computers to solve problems that are specific to computing itself that *DDR Holdings* held patentable under § 101. *See id.* at 1259. IBM does not identify any computer-specific problems that its patents solve. Recognizing as much does not require any factual inquiry.

Moreover, IBM's characterizations of the supposedly particular methods of computing to which its claims are directed are unmoored from content the patents themselves. Again with respect to the '183 patent, for example, the words "pixel," "pattern," and "classifier" do not even appear in the patent specification or claims. Neither the claims nor the patent specification refer to using a computer or an image classifier to recognize patterns in pixels or anything else, and the notion that the claimed comparison of image data is directed to some manner of doing so is pure fiction. The claims upheld in *DDR Holdings* recited specific steps for achieving the ultimate result of providing a web page with the same "look and feel" of the referring site by incorporating elements from multiple sources in a composite page in a manner. 773 F. 3d at 1259. The '183 patent's "comparing" step, by contrast, claims a naked result pulled from a black box.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IBM's further repeated suggestion that its inventions "allow for a more efficient and less resource intensive way" of achieving various practical results likewise does not address patentability because efficiency is just the point and expected result of automating information processing with computers. It is only where automation achieves efficiency by performing tasks in a different way than humans that it may be deemed patent-eligible under *McRO*. *See* 837 F. 3d at 1299. But IBM's characterizations of its inventions on this point are wholly conclusory.

Finally, IBM's recitations of the ordered combination of steps involved in each patent fail to suggest why an issue of fact might arise about the eligibility of its claims under *Berkheimer*. IBM frames the question under *Berkheimer* as whether the specific permutations of receiving, searching, parsing, and storing information and the like that its patents claim were routine and conventional. But *Berkheimer* makes clear that mixing and matching conventional data processing operations in different ways does not produce unconventional ordered combinations. *See* 881 F.3d at 1366. The fact issue in *Berkheimer* concerned whether the form of a data structure that enabled computing operations to be performed more efficiently was conventional. 881 F.3d. at 1370. But the Federal Circuit held that claims involving any number of variations on performing such operations without reciting the data structure itself were patent ineligible as a matter of law. *See id.* IBM points to no comparable element to tie its claims to *Berkheimer*.

(iv)    Zillow does not believe that any materials outside of the patents and their respective prosecution histories need to be considered in a § 101 analysis. Zillow responds to IBM's arguments regarding sources of proof on eligibility in its own separate brief.

(v)    Zillow asserts that the following Supreme Court and/or Federal Circuit decisions discuss the patentability of claims similar to those of the patents listed in response to Paragraph

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

5(d)(i). Zillow has confined this list to those cases addressing claims most directly on point and does not contend that this presents an exhaustive list of relevant authority.

- '183 Patent:
  - *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)
  - *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016)
  - *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017)

- '389 Patent:
  - *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017)

- '789 Patent:
  - *Move, Inc. v. Real Estate All. Ltd.*, 721 F. App'x 950 (Fed. Cir.), *cert. denied*, 139 S. Ct. 457, 202 L. Ed. 2d 348 (2018)
  - *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018)
  - *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017)

- '346 Patent:
  - *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682 (Fed. Cir. June 19, 2020)

- '904 Patent:
  - *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020)
  - *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017)
  - *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 886 (Fed. Cir. 2019)

- '443 Patent:
  - *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020)
  - *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018)

**(e)   Indefiniteness**

IBM's Position:

1    IBM proposes that indefiniteness be considered and briefed in conjunction with claim

2    construction and that each term Zillow contends to be indefinite should count toward the ten terms

3    to be decided pursuant to Local Patent Rule 132(c).

4    According to Zillow's claim construction disclosures submitted pursuant to the then-

5    governing Patent Local Rules, Zillow intends to argue that 44 claim terms are indefinite.  Exhibit C

6    (Zillow's Preliminary Claim Constructions Pursuant To Patent Local Rule 4-2).  Zillow has made

7    no attempt to narrow its indefiniteness arguments to a reasonable number and should be required to

8    do so pursuant to W.D. Wash. Local Patent Rule 132(c).  The parties agree that they should

9    address indefiniteness in their claim construction briefing, and there is no practicable way for the

10   parties to address indefiniteness arguments concerning 44 claim terms as part of that process.

11   Zillow's Position:

12   Zillow proposes that indefiniteness be considered and briefed in conjunction with claim

13   construction, but should not count toward the presumptive ten terms to be decided unless the party

14   claiming indefiniteness also advances a construction in the alternative, as the presumptive ten term

15   limit under Local Patent Rule 132(c) on its face refers to the number of disputed terms that the Court

16   will construe. Zillow proposes that the parties include any arguments regarding indefiniteness in

17   their claim construction materials rather than in separate briefing.

18   The number of terms that Zillow has identified as indefinite is large because the number of

19   claims and patents that IBM has asserted in this suit is larger. IBM has not called out any particular

20   indefiniteness positions that Zillow has taken as being unreasonable. IBM should not be heard to

21   claim that the number of issues that Zillow should be permitted to raise should be limited to an

22   arbitrary number when it refuses to accept any limits on the number of patent claims it asserts.

23   **(f)    Tutorial**

24

25   IBM Position:

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

3

       IBM proposes that the parties submit video tutorials of 20 minutes per patent, up to a maximum of one hour per side, at the same time that they submit their opening claim construction briefs.

4

5

6

7

8

9

       Technology tutorials are designed to be non-argumentative primers for the Court.  If the parties submit their tutorial after the completion of claim construction briefing, the parties may be tempted to use the tutorials to reargue claim construction briefing, rather than providing an overview about the patents.  Therefore, IBM submits that technology tutorials should be submitted at the onset of claim construction briefing.  Submitting the technology tutorials at the beginning would also give the Court ample opportunity to review the technology tutorials before the claim construction hearing.

10

       <u>Zillow Position</u>:

11

12

13

       Zillow proposes that two weeks after the completion of claim construction briefing the parties submit video tutorials of 20 minutes per patent, per side, in conjunction with any of the phasing proposals outlined in response to paragraph 5(a).

14

     **(g) Court-Appointed Expert**

15

16

       <u>Joint Position</u>:

17

18

19

20

21

22

       The parties propose that each side identify up to three proposed candidates to the other two weeks after the entry of a scheduling order.  Two weeks later, after meeting and conferring, the parties will jointly move for the appointment of any agreed candidate, or, in the event they cannot agree on a candidate, will submit a joint statement respectively identifying each side's proposed candidates and objections to the other side's proposed candidates. The Court would then select from the submitted names.

23

24

25

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

        DATED this 20th day of August, 2020.

2    SUSMAN GODFREY LLP                    HARRIGAN LEYH FARMER & THOMSEN LLP

3    By:  *s/Ian B. Crosby*                By:  *s/Arthur W. Harrigan, Jr.*
     By:  *s/Daniel Shih*                  By:  *s/Tyler L. Farmer*
4    By:  *s/Edgar G. Sargent*                  Arthur W. Harrigan, Jr., WSBA #1751
     By:  *s/Katherine Peaslee*                 Tyler L. Farmer, WSBA #39912
5          Ian B. Crosby, WSBA #28461           999 Third Avenue, Suite 4400
           Daniel Shih, WSBA #37999             Seattle, WA  98104
6          Edgar G. Sargent, WSBA #28283        Tel:  (206) 623-1700
           Katherine Peaslee, WSBA #52881       Fax: (206) 623-8717
7          1201 Third Avenue, Suite 3800        Email:  arthurh@harriganleyh.com
           Seattle, WA  98101                   Email:  tylerf@harriganleyh.com
8          Tel:  (206) 516-3880
           Fax: (206) 516-3883            DESMARAIS LLP
9          Email:  icrosby@susmangodfrey.com
           Email:  dshih@susmangodfrey.com      John M. Desmarais (*pro hac vice*)
10         Email:  esargent@susmangodfrey.com   Karim Z. Oussayef (*pro hac vice*)
           Email:  kpeaslee@susmangodfrey.com   Brian D. Matty (*pro hac vice*)
11                                              Brian Leary (*pro hac vice*)
                                                Alexandra E. Kochian (*pro hac vice*)
12   *Attorneys for Zillow Group Inc. and Zillow,*   John Dao (*pro hac vice*)
     *Inc.*                                     Jun Tong (*pro hac vice*)
13                                              230 Park Avenue, 26th Floor
                                                New York, NY 10169
14                                              Tel:  (212) 351-3400
                                                Fax: (212) 351-3401
15                                              Email:  jdesmarais@desmaraisllp.com
                                                Email:  koussayef@desmaraisllp.com
16                                              Email:  bmatty@desmaraisllp.com
                                                Email:  bleary@desmaraisllp.com
17                                              Email:  akochian@desmaraisllp.com
                                                Email:  jdao@desmaraisllp.com
18                                              Email:  jtong@desmaraisllp.com
19

20                                         *Attorneys for International Business Machines*
                                           *Corporation*
21

22

23

24

25